**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-CV-62540-GAYLES/STRAUSS**

**FELECIA M. PRESTON,**

     Plaintiff,

v.

**ANDREW SAUL,**
**Commissioner of Social Security,**

     Defendant.

_____/

**REPORT AND RECOMMENDATION**

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [DE 19] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 20]. This case was referred to me for a ruling on all pre-trial, non-dispositive matters and for a report and recommendation on any dispositive matters [DE 2]. I have reviewed both motions, all summary judgment materials, and the record in this case. For the reasons discussed herein, I **recommend** that Plaintiff's Motion [DE 19] be **DENIED** and that Defendant's Motion [DE 20] be **GRANTED**.

**BACKGROUND**

**I.    PROCEDURAL HISTORY**

Plaintiff applied for disability insurance benefits and supplemental security income on or about March 31, 2015, alleging disability as of March 16, 2015 ("Alleged Onset Date"). Tr. 17, 246-53. Her applications were denied initially and upon reconsideration. Tr. 163-68, 175-84. Thereafter, Plaintiff appeared with counsel at a hearing before an Administrative Law Judge ("ALJ") on June 14, 2018; a vocational expert ("VE") also appeared and testified. Tr. 36-70. On August 14, 2018, the ALJ issued his decision, finding that Plaintiff was not "disabled" under the

Social Security Act (from the Alleged Onset Date through the date of the ALJ's decision).  Tr. 14-33.  On August 21, 2019, the Appeals Council of the Social Security Administration denied Plaintiff's request for review, thereby leaving the ALJ's decision as the final decision of the Commissioner.  Tr. 1-4.  Consequently, on October 11, 2019, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

## II.     PLAINTIFF'S BACKGROUND

Plaintiff was fifty-four (54) years old on the Alleged Onset Date and fifty-seven (57) years old at the time of the hearing before the ALJ (and on the date that the ALJ issued his decision). Tr. 26, 41.  Plaintiff has a GED, completed some community college, and can communicate in English.  Tr. 26, 44.  The VE testified that Plaintiff performed past relevant work as an administrative clerk, assistant manager, club manager, and kitchen manager (albeit with less duties than most kitchen managers).  Tr. 63-65.

## III.    HEARING TESTIMONY

### A.  PLAINTIFF'S TESTIMONY

Plaintiff testified that she stopped working because of issues with her heart (congestive heart failure and respiratory failure).  Tr. 44.  She does not feel like she can work any longer because she experiences shortness of breath, is frequently tired, and becomes sick easily.  Tr. 50. She also has some knee issues (with pain of 4 to 5 on a 1 to 10 scale), but she testified that it is primarily her breathing issues that make it difficult to work.  Tr. 50, 53.

Plaintiff has been diagnosed with COPD, PAD, atherosclerosis, calcification of the aorta, and diabetes type 2, though her diabetes is well controlled with medication.  Tr. 50.  She uses an inhaler for her COPD and takes various other medications.  Tr. 51-52.  Plaintiff stated that she experiences dizziness from her medications but that she has not noticed any other side effects.  Tr.

52-53.  At the time of her hearing before the ALJ, Plaintiff had not been recently hospitalized, and doctors had not placed any restrictions on her activity beyond saying not to "push it" or "overdo." Tr. 54-55.

Plaintiff lives in a second-floor apartment with stairs and no elevator.  Tr. 42.  She generally walks up and down the stairs at least once a day.  Tr. 52.  Plaintiff can care for herself, shower and bathe herself, get dressed by herself, cook, and do dishes.  Tr. 58.  She does her own laundry including bringing it downstairs, but somebody usually brings it up for her.  Tr. 58-59.  Plaintiff also does her own grocery shopping and is able to drive.  Tr. 43, 58.  However, she cannot carry 20 pounds or more and, while she can kneel or stoop down, she has some difficulty.  Tr. 57-58. With respect to walking, Plaintiff is able to walk to the beach, which is about a block away.  Tr. 59.  However, she can only walk two or three blocks.  Tr. 57.  Plaintiff also reads a lot, sketches, writes poetry, writes in her journal, works on puzzles, and uses social media.  Tr. 60.

### B.  VE'S TESTIMONY

The VE first provided testimony regarding Plaintiff's prior work experience, opining that, of Plaintiff's prior jobs, there would likely only be transferable skills from Plaintiff's administrative clerk position.  Tr. 64-65.  Such transferrable skills would relate to the ability to complete certain clerical tasks including the operation of office equipment, reading and writing reports, and data entry.  Tr. 65.

After testifying about Plaintiff's prior work experience, the VE answered certain hypothetical questions posed by the ALJ.  Tr. 66-68.  For instance, the ALJ asked the VE whether an individual with Plaintiff's age, education, and work experience, who can perform work at a light exertional level, occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, frequently balance, occasionally stoop, kneel or crouch, but never crawl, and who must also avoid

concentrated exposure to extreme heat, humidity, fumes, odors, dusts, and pulmonary irritants, could perform any of Plaintiff's past work.  Tr. 67.  The ALJ also noted that the person in the hypothetical could use normal work breaks to compensate for any time off task.  Tr. 67.[1] According to the VE, such an individual could perform Plaintiff's past work as an administrative clerk and assistant manager (both as generally performed and as actually performed by Plaintiff). Tr. 67-68.  The VE further testified that such an individual could also perform other jobs that exist in the national economy including the jobs of cashier II (850,000 jobs), rental clerk (52,000 jobs), and inspector/packager (82,000 jobs).  Tr. 66-67.  However, the VE testified that a similar hypothetical individual who would consistently be absent from work at least twice a month would not be able to maintain a job.  Tr. 68.

## STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence."  *See* 42 U.S.C. 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  It "is something 'more than a mere scintilla, but less than a preponderance.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted).  "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it."  *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  Courts "may not decide the facts anew, reweigh the evidence,

---

[1] This hypothetical is consistent with the ALJ's RFC determination.  *See* Tr. 21.

or substitute [their] judgment for that of the [Commissioner]." *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## DISCUSSION

### I.     THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)). *See also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 404.1520. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities.

20 C.F.R. § 404.1520(c).  If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis.  *See id.*

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations.  20 C.F.R. § 404.1520(d).  If so, the ALJ will find the claimant disabled without considering age, education, and work experience.  *Id.*  If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work.  20 C.F.R. § 404.1520(e).  The Regulations define RFC as "the most you can still do despite your limitations."  20 C.F.R. § 404.1545(a)(1).  This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others.  20 C.F.R. § 404.1545(a)(3).  The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work.  If so, the claimant is found not disabled.  20 C.F.R. § 404.1520(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five.  "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs.  *Id.*  At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work.  *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. *See* 20 C.F.R. § 404, subpt. P, app. 2. The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. § 404.1569. The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule." 20 C.F.R. § 404.1569. Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (citation omitted). *See also Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC. *Hargis*, 945 F.2d at 1490. However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003). A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

7

## II.   **ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION**

After considering the evidence, the ALJ found that Plaintiff was able to perform certain past relevant work as well as other jobs existing in significant numbers in the national economy. Tr. 26-27.  Therefore, the ALJ concluded that Plaintiff was not disabled at any time between the Alleged Onset Date and the date of the ALJ's decision.  Tr. 27.

Preliminarily, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017.  Tr. 18.  Then, addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the Alleged Onset Date.  Tr. 20.  Next, the ALJ found that Plaintiff had the severe impairments of cardiomyopathy, COPD, and degenerative disc disease (disorders of back-discogenic and degenerative).  Tr. 20.  However, the ALJ then found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 20.

The ALJ next assessed Plaintiff's RFC, determining that Plaintiff had the RFC

to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps or stairs. She can never climb ladders, ropes, or scaffolds. She is capable of frequent balancing and occasional stooping, kneeling, or crouching. She can never crawl. She must avoid concentrated exposure to extreme heat, humidity, fumes, odors, dusts, and other pulmonary irritants. Time off-task can be accommodated by normal work breaks.

Tr. 21.  As part of this assessment, the ALJ noted that he considered the evidence, including objective medical evidence (noting he considered the entire medical record even when not explicitly discussed), opinion evidence, and Plaintiff's reported symptoms; he also considered the extent to which Plaintiff's symptoms could reasonably be accepted as consistent with the evidence. Tr. 22.  The ALJ discounted Plaintiff's subjective complaints, finding that while her impairments could cause her symptoms, Plaintiff's "statements concerning the intensity, persistence and

8

limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 22.  To support his findings, the ALJ included a detailed discussion in his decision regarding all of the evidence, discussing treatment notes, examination results, and medical records from numerous different doctors. *See* Tr. 22-26.  He began by discussing medical evidence from the Alleged Onset Date (March 16, 2015), continued by discussing a significant amount of medical evidence originating after the Alleged Onset Date, and ultimately concluded by discussing chest x-rays completed 9 days before the hearing, as well as opinion evidence from a state agency physician. *See* Tr. 22-26.

After assessing Plaintiff's RFC, the ALJ considered whether Plaintiff had the ability to perform her past relevant work. Tr. 26.  The ALJ concluded that Plaintiff was able to perform her past relevant work as an administrative clerk and assistant manager. Tr. 26.  Although the ALJ found that Plaintiff could perform such work, the ALJ nevertheless proceeded to step 5 of the sequential evaluation and made certain alternative findings. Tr. 26-27.  The ALJ considered Plaintiff's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines to determine whether a significant number of other jobs, that Plaintiff could perform, existed in the national economy. Tr. 26-27.  The ALJ noted that Plaintiff was fifty-four (54) years old on the Alleged Onset Date, which is defined as an individual of advanced age. Tr. 26.  He also noted that Plaintiff has at least a high school education and that she is able to communicate in English. Tr. 26.  The ALJ relied on testimony from the VE to determine whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. Tr. 27.  The VE had identified three representative occupations that such an individual could perform: cashier II; rental clerk; and inspector/packager. Tr. 27.  The ALJ found that the VE's testimony was consistent with the Dictionary of Occupational Titles. Tr. 27.  Therefore, the ALJ

concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the

Alleged Onset Date through the date of the ALJ's decision.  Tr. 27.

### III.   ANALYSIS OF ISSUES

Plaintiff argues that the ALJ erred for two separate reasons.  First, she asserts that the ALJ

failed to consider and weigh the opinion of Dr. Bazzi, her treating physician.  Second, Plaintiff

argues that the ALJ's RFC determination is not supported by substantial evidence.

### A.  DR. BAZZI

To the extent the ALJ erred in not explicitly discussing any opinion of Dr. Bazzi, any such

error was harmless.  As an initial matter, it is questionable whether Dr. Bazzi even offered a

medical opinion.  "Medical opinions are statements from acceptable medical sources that reflect

judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's]

symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and

[the claimant's] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(1).  Here, the sole

purported opinions Plaintiff points to are contained in a two (2) page questionnaire, dated June 23,

2015, within the 1,068-page administrative record.  *See* Tr. 615-16.

First, Dr. Bazzi checked a box indicating that Plaintiff had a "walking" limitation related

to her cardiac condition (no other limitations, including "standing," were checked), providing the

following explanations/examples: "shortness of breath walking [] flight of stairs" and "out of

breath walking 1 block."  Tr. 615.  As to the two examples/explanations, it is clear that Dr. Bazzi

merely noted Plaintiff's subjective complaints.  *See* Tr. 596 (April 30, 2015 treatment notes stating

that Plaintiff "reports that she can only walk a block before getting [shortness of breath]" and

noting "Dyspnea after walking up flights of stairs").[2]  Therefore, it is unclear whether Dr. Bazzi was attempting to offer any opinion at all or merely indicating that Plaintiff claimed to have a "walking" limitation.  Even if Dr. Bazzi was attempting to offer an opinion, it was one based solely on Plaintiff's subjective complaints, and it does not come within the ambit of a "medical opinion" because it does not reflect any "judgment" regarding the "nature and severity" of the impairment. *See Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 812 (11th Cir. 2017) ("But at least some of the records contain no judgments about the nature and severity of her impairments and thus do not contain opinions.").  Significantly, subjective complaints "cannot serve as the sole basis for a medical opinion." *Tredik v. Comm'r of Soc. Sec. Admin.*, No. 19-14606, 2020 WL 5496290, at *2 (11th Cir. Sept. 11, 2020) (citing *Crawford*, 363 F.3d at 1159).[3]

In the June 23, 2015 questionnaire, Dr. Bazzi also noted that Plaintiff had not undergone an exercise or chemical cardiac stress test because she could not walk to complete the test.  Tr. 615-16.  Again, Dr. Bazzi does not appear to be offering any "judgment" regarding the "nature and severity" of any impairment.  Moreover, as Defendant notes, Dr. Bazzi's treatment notes indicate that Plaintiff successfully completed a stress test in January 2016, less than twelve months after the Alleged Onset Date and less than twelve months after the date of the questionnaire.[4]  *See*

---

[2] Relatedly, the June 23, 2015 questionnaire notes "Dyspnea on exertion" and the April 30, 2015 patient notes reflecting Plaintiff's history and subjective complaints note "dyspnea during exertion."  Tr. 596, 615.

[3] *See also Moreno v. Berryhill*, No. 16-CV-61550, 2017 WL 3610596, at *8 (S.D. Fla. July 17, 2017) ("Moreno's subjective complaints to Dr. Tong are not statements from an acceptable medical source which reflect judgments about the nature and severity of the impairment. Accordingly, the ALJ was not required to weigh the statement as a medical opinion.").

[4] *Cf. Douglas v. Comm'r, Soc. Sec. Admin.*, No. 19-14487, 2020 WL 6301362, at *4 (11th Cir. Oct. 28, 2020) ("The ALJ did not discuss the treatment notes from Douglas's first OT session in June 2015, which stated that she required assistance with dressing, bathing, and cooking. In light of the evidence from the later sessions indicating that Douglas was able to perform her activities,

Tr. 668-69.  As noted above, to constitute a disability, an impairment must typically last or be expected to last "for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).  Clearly, that was not the case here with respect to the stress test issue.

However, assuming *arguendo* that Dr. Bazzi offered a medical opinion, the ALJ committed harmless error by not assigning any weight to any such opinion.   The Eleventh Circuit has recognized as follows:

> Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so.

> Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (internal citations omitted).

At first blush, it looks like the foregoing language from *Winschel*, a binding case, requires remand if Dr. Bazzi did in fact offer a medical opinion.  That is because, notwithstanding the ALJ's discussion of Dr. Bazzi's treatment notes and records, the ALJ's decision does not explicitly assign any weight to any opinion purportedly offered by Dr. Bazzi within the two-page questionnaire, and it does not explicitly discuss the questionnaire.  However, in post-*Winschel* cases, albeit in

---

albeit with difficulty, this omission does not undermine the substantial evidence supporting the ALJ's determination." (citing *Crawford*, 363 F.3d at 1158-59)).

unpublished decisions, the Eleventh Circuit has recognized that the directives in *Winschel* are not to be applied so rigidly and without exception so as to automatically dictate a finding of reversible error, without considering the circumstances, every time an ALJ does not explicitly state the weight given to a medical opinion.

For instance, in *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555 (11th Cir. 2015), the court held that any error committed by the ALJ in not identifying the weight assigned to two medical opinions was harmless "because it did not affect the [ALJ's] ultimate determination." *Id.* at 558 (citing *Dyer*, 395 F.3d at 1211). As the court noted, there "is no rigid requirement" that an ALJ "'specifically refer to every piece of evidence in [the ALJ's] decision,' so long as the decision is not 'a broad rejection' that leaves the [reviewing court] with insufficient information to conclude whether the [ALJ] considered the claimant's medical condition as a whole." *Id.* at 557 (citing *Dyer*, 395 F.3d at 1211).

In finding no reversible error in *Hunter*, the court recognized that the ALJ summarized the treatment notes of the two doctors offering the medical opinions (even though the ALJ did not refer to those doctors by name) and found that the ALJ considered the plaintiff's medical condition as a whole. *Id.* at 558. The court further noted that the two doctors did not opine regarding how the plaintiff's medical conditions would impact his ability to perform his past relevant work. *Id.* Notably, in concluding as it did in *Hunter*, the court expressly discussed *Winschel*. Thus, it effectively recognized that *Winschel* does not stand for the proposition that the failure to assign a specific weight to a medical opinion can never constitute harmless error. While Plaintiff argues that *Hunter* contradicts *Winschel* [DE 22 at p. 2], Plaintiff's reading of *Winschel* is overly rigid, and accepting Plaintiff's argument would require this Court to find that three Eleventh Circuit judges clearly got it wrong in *Hunter* notwithstanding their consideration of *Winschel*.

Moreover, the panel in *Hunter* is not the only Eleventh Circuit panel to interpret the concepts enunciated in *Winschel* differently than Plaintiff. *See Lara*, 705 F. App'x at 812 (finding ALJ's failure to state weight assigned to potential medical opinions to be harmless where the ALJ's decision reflected that she considered the treatment notes of the medical providers and the ALJ's decision was consistent with the records); *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015) ("[W]e find no reversible error. Although the ALJ never stated the weight given to Dr. Frailing's treatment notes, the ALJ discussed the content of Dr. Frailing's notes, showing that the ALJ considered and gave weight to this medical evidence."); *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014) ("[E]ven if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of Dr. Giron's opinion, this error was harmless because it is still clear that the ALJ's rejection of the portions of Dr. Giron's opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantial evidence.").

As in *Hunter*, the ALJ in this case clearly considered Plaintiff's medical condition as a whole. The ALJ extensively discussed the evidence including Plaintiff's treatment notes and medical records from numerous different physicians. Moreover, the ALJ specifically discussed Dr. Bazzi's treatment notes, referring to Dr. Bazzi by name in three separate places:

> On January 5, 2016, Ali Ba[z]zi, M.D., FACC, noted that the claimant had cardiomyopathy, hyperlipidemia, and hypertension (systemic). The claimant complained of chest pain, weakness, fatigue, shortness of breath with activity, and dizziness throughout the day. She reported good exercise habits. Her heart rate was not fast. She had muscle aches but no leg pain. No localized joint pain or stiffness. She had no fainting, no anxiety, and no depression. She was oriented x3 and in no acute distress. Her balance, gait, and stance were normal. She had no costavertebral tenderness. Her overall musculoskeletal system findings were normal bilaterally with no positive Roman's sign. Her diabetes was no [sic] well controlled. She reported that she was unable to walk more than 200 yards without shortness of breath (Exhibit 8F/2-6).
> . . .
> On January 29, 2016, Ali Bazzi, M.D., F.A.C.C., examined the claimant and found no wheezing, rales, or crackles. A myocardial perfusion study was normal. The left

ventricle ejection fraction was 60%. The right ventricle did not appear dilated. An ECG was within normal limits. Blood pressure response was normal. There was a low likelihood of exercise induced ischemia (Exhibit 9F/1-3).

. . .

On May 15, 2018, Dr. Bazzi, examined the claimant and found coronary artery disease of native artery of native heart with stable angina pectoris, NIDDY (non-insulin dependent diabetes mellitus in young), and chronic obstructive pulmonary disease, unspecified (Exhibit 21F).

Tr. 23, 26.

In her Reply, Plaintiff attempts to distinguish *Hunter*, arguing that Dr. Bazzi's purported

opinion shows that Plaintiff cannot perform her past relevant work or the other jobs identified by

the VE and ALJ [DE 22 at pp. 3-4].  But it does not show that.  Plaintiff bases her argument on a

Social Security Ruling providing that light work may involve up to a total of 6 hours of standing

or walking, off and on, in an 8-hour workday.  *See* SSR 83-10, 1983 WL 31251, at *6.  However,

Dr. Bazzi's purported opinion says absolutely nothing regarding the amount of time Plaintiff can

walk off and on during a workday.  Moreover, Dr. Bazzi did not check off any standing limitation,

and the same Social Security Ruling provides that "[m]any unskilled light jobs are performed

primarily in one location, with the ability to stand being more critical than the ability to walk."  *Id.*

While Plaintiff's past relevant work does not fall under the "unskilled" umbrella, the other three

jobs identified (cashier II, rental clerk, inspector/packager) do as all three are SVP 2 jobs.  *See*

SSR 00-4, 2000 WL 1898704, at *3 ("unskilled work corresponds to an SVP of 1-2").  Of course,

Plaintiff had the burden to show that she could not perform her past relevant work, and at step 5,

once Defendant carried its burden of showing possible alternative employment through the VE's

testimony, the burden returned to Plaintiff to prove an inability to perform the jobs that the ALJ

found Plaintiff could alternatively perform.  *See Washington*, 906 F.3d at 1359.

In any event, even if Dr. Bazzi was offering a medical opinion that Plaintiff had some

walking limitation, as mentioned above, any such opinion was clearly conclusory and based on

Plaintiff's subjective complaints. Thus, not only was there good cause to discount any such opinion, but it is evident that nothing in Dr. Bazzi's purported opinion could have affected the ALJ's ultimate determination.[5] Simply stated, this is not a case where the court is left with insufficient information to conclude that the ALJ considered Plaintiff's medical condition as a whole. On the contrary, the ALJ states the grounds for his decision in detail and with clarity. Therefore, any error by the ALJ in failing to specifically discuss and weigh Dr. Bazzi's purported conclusory opinion was harmless.

### B. RFC

The ALJ's RFC determination is supported by substantial evidence. In fact, a substantial amount of relevant medical evidence supporting the ALJ's findings is discussed at length in the ALJ's decision. Nevertheless, Plaintiff contends that the ALJ erred in two respects in determining Plaintiff's RFC. First, Plaintiff argues that the ALJ did not account for her walking issues and how they affect her ability to perform light work. Second, Plaintiff asserts that the ALJ did not consider whether Plaintiff's recurring issues with respiratory infections should have affected Plaintiff's RFC.

#### 1. Knee/Walking Issues

As to Plaintiff's walking issues,[6] Plaintiff primarily argues that substantial evidence does not support the ALJ's determination that she has the ability to perform the standing/walking

---

[5] *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) ("When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

[6] In the Motion, Plaintiff preliminarily implies in passing that the ALJ erred at Step 2 by not discussing Plaintiff's "knee problems" [DE 19 at p. 15]. In doing so, Plaintiff cites a single case, which Plaintiff (mis)characterizes as finding that the failure to consider certain impairments at Step 2 is not harmless error even if an ALJ finds other severe impairments, and thus, moves to

generally associated with light work.  Her argument is based, in part, on the same argument discussed above – that the ALJ did not consider and assign weight to Dr. Bazzi's opinion.  Again, Dr. Bazzi's purported opinion, if even an opinion, does not show that Plaintiff cannot carry out the standing and/or walking typically involved in light work (as noted above, in addition to several issues with Dr. Bazzi's so-called "opinion," he did not even check off standing as a limitation).

Plaintiff also discusses various other medical records regarding her complained-of knee issues.  For instance, in the Motion, she notes reporting knee issues on July 16, 2015, discusses her right knee x-rays from July 21, 2015, and discusses her February 2, 2016 examination that she attended because she was having trouble walking [DE 19 at p. 16].  While "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," *Dyer*, 395 F.3d at 1211, here, the ALJ actually discussed and explicitly considered Plaintiff's medical records from July 16, 2015, July 21, 2015, and February 2, 2016 (as well as many other medical records showing that he considered Plaintiff's medical condition as a whole).  Tr. 22-23.  In fact, the ALJ specifically noted that the July 21, 2015 x-rays of Plaintiff's "right knee showed mild to moderate joint space narrowing of the medial compartment of the right knee without evidence of an acute bony abnormality."  Tr. 22.  With respect to the February 2, 2016 examination, the ALJ noted that Plaintiff "had difficulty walking due to left knee osteoarthritis disorder.  Dr. Calderin examined

---

Step 3 anyway.  [DE 19 at p. 15] (citing *Smith v. Colvin*, No. 1:15-23010-CIV, 2016 WL 5369305, at *6-7 (S.D. Fla. Sept. 26, 2016)).  While the court in *Smith* cited other district court cases finding that a Step 2 error is not automatically harmless when an ALJ moves to Step 3 notwithstanding the error, the court explicitly made clear that it was not deciding the issue.  Moreover, the Eleventh Circuit has recognized that "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."  *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).  In any event, the ALJ in this case specifically discussed medical records relating to Plaintiff's knee in conjunction with the ALJ's RFC analysis.  *See* Tr. 22, 23, 25, 26.

the claimant and found her systems within normal limits. She had decreased range of motion in

the left knee, mild deformation changes, and no swelling or erythema." Tr. 23.[7]

I find the Eleventh Circuit's decision in *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863

(11th Cir. 2011), to be instructive.  In *Carson*, the court stated as follows:

> While, the ALJ did not specifically refer to Mr. Carson's ability to walk or stand,
> the ALJ did limit Mr. Carson's exertional level of work to "light work." "Light
> work" by definition limits the amount an individual can walk or stand for
> approximately six hours in an eight-hour work day. *See* SSR 83–10, 1983 WL
> 31251 (S.S.A.). Furthermore, the ALJ's thorough evaluation of Mr. Carson's case
> led the ALJ to adopt additional limitations to Mr. Carson's ability to perform light
> work. Simply because the ALJ chose not to adopt further limitations on Mr.
> Carson's ability to walk or stand, does not mean the ALJ did not properly consider
> the alleged limitations. Furthermore, there is substantial evidence that Mr. Carson
> is not fully disabled in regards to walking or standing because none of the doctors
> that evaluated Mr. Carson noted any concerns with his ability to stand or walk,
> other than what Mr. Carson complained of to them. On the contrary, Mr. Carson's
> treating physician, Dr. Lord, only put limitations on Mr. Carson's ability to use his
> left shoulder. Tr. at 13 Furthermore, Dr. Tran, who examined Mr. Carson for the
> Commissioner, noted that Mr. Carson's gait was normal and that he was able to
> enter and exit the examining table without difficult. *Id.* at 291. As such, the ALJ
> could properly decide that Mr. Carson could walk or stand for approximately six
> hours in an eight-hour work day.

*Id.* at 864.  Similarly, in this case: (1) "the ALJ's thorough evaluation of [Plaintiff's] case led the

ALJ to adopt additional limitations to [Plaintiff's] ability to perform light work"; (2) Dr. Bazzi,

the only doctor Plaintiff claims opined she had a walking limitation, checked off such a limitation

solely based on Plaintiff's complaints to Dr. Bazzi; (3) as the ALJ noted, several doctors found

that Plaintiff had normal gait (*see* Tr. 22-25); and (4) as the ALJ also noted in discussing

examinations of Plaintiff in 2015 and 2018, Plaintiff did not have any issues entering and exiting

---

[7] In her Reply, Plaintiff continues to argue that the ALJ did not consider certain evidence regarding
her knee condition [DE 22 at pp. 6-7].  For instance, Plaintiff points to an April 11, 2018 MRI.
However, Plaintiff ignores that the ALJ specifically discussed the results of the MRI in formulating
Plaintiff's RFC.  Tr. 25.  Of course, the ALJ did so even though he was not required to explicitly
discuss every piece of evidence in the record.  Plaintiff also argues that the ALJ did not discuss
Dr. Katz's May 29, 2018 examination, but the ALJ clearly did in detail (there is a scrivener's error
in the ALJ's decision listing the date as March 29, 2018 instead of May 29, 2018).  Tr. 26.

the examination table (*see* Tr. 22, 25).  Therefore, as in *Carson*, "the ALJ could properly decide that [Plaintiff] could walk or stand for approximately six hours in an eight-hour work day." Moreover, it is important to note that the only opinion evidence of record that specifically contains an opinion regarding Plaintiff's ability to walk and/or stand for six hours in an eight-hour work day is the opinion evidence of the State Agency physician, who found that Plaintiff had the ability to do just that.  Tr. 26, 137, 152.  Dr. Bazzi's conclusory opinion does not conflict with that determination.

Furthermore, "the 'mere existence' of an impairment is insufficient to establish limitations on a claimant's ability to work or to undermine the ALJ's RFC finding."  *Chiappini v. Comm'r of Soc. Sec.*, 737 F. App'x 525, 529 (11th Cir. 2018) (citing *Moore*, 405 F.3d at 1213 n.6).  Notably, while Plaintiff testified to having knee issues, she herself stated that her knee issues are not the primary cause of her alleged inability to work.  Tr. 50.  Ultimately, the ALJ's decision makes clear that he considered the entire medical record and points to a plethora of evidence supporting his determination that Plaintiff can perform light work with the further modifications the ALJ incorporated in her RFC.

### 2.  Respiratory Issues

Plaintiff argues that the ALJ failed to take Plaintiff's respiratory issues into account in formulating Plaintiff's RFC.  However, the ALJ's detailed decision squarely refutes Plaintiff's argument in that it discusses Plaintiff's breathing issues and is supported by substantial evidence in not including further limitations in Plaintiff's RFC.  As the ALJ noted, at a July 16, 2015 appointment with Dr. Calderin, Plaintiff "was well-appearing.  She had normal breath sounds, with no wheezing, rhonchi, rales, crackles, or rubs.  Her heart sounds were normal."  Tr. 22.  At an October 28, 2015 appointment, Dr. Magcalas examined Plaintiff and "found her lungs clear to

19

auscultation bilaterally, with no wheezes, rhonchi, or rales." Tr. 23.  January 26, 2016 chest x-rays revealed no acute intrathoracic disease. Tr. 23.  On January 29, 2016, Dr. Bazzi examined Plaintiff "and found no wheezing, rales, or crackles. A myocardial perfusion study was normal." Tr. 23.  At an April 13, 2016 appointment with Dr. Calderin, Plaintiff said she felt well, and she denied having chest pain or shortness of breath. Tr. 24, 749.  Plaintiff had normal breath and heart sounds. Tr. 24, 751.  In September 2016, Plaintiff had an upper respiratory infection, but she denied having shortness of breath, chest pain, or palpitations. Tr. 24.  At a November 2016 examination, Plaintiff felt well, denied having symptoms, and was within normal limits. Tr. 24. In February 2017, Plaintiff complained of respiratory issues but denied having chest pain and many other symptoms.  At a March 2018 examination, Plaintiff complained of a cough, chest congestion, and mild wheezing, but she did not have any chest pain or palpitations and did not report several other symptoms. Tr. 24.  Plaintiff's "respiratory effort was within normal limits, with bilateral wheezes and coarse breath sounds." Tr. 24.  At a March 20, 2018 appointment, Plaintiff's "lungs were clear to percussion and auscultation, without wheezes, rhonchi, or rales," and she had normal heart sounds. Tr. 25.

There is undoubtedly some evidence showing that Plaintiff suffered from certain respiratory and breathing issues at times.  But the ALJ did not ignore that evidence.  Instead, he repeatedly makes clear that he considered all of the evidence, and his decision even discusses some of the evidence from times that Plaintiff was experiencing respiratory issues.  Nevertheless, Plaintiff wants the Court to conclude that the ALJ erred by not finding that Plaintiff's respiratory issues would cause her to miss work several times a month.  However, Plaintiff does not point to any opinion evidence indicating that she would consistently miss two or more days of work per

month.[8]  Ultimately, substantial evidence supports the ALJ's determination, and this Court cannot reweigh the evidence or substitute its judgment for that of the ALJ, "even if the evidence preponderates against" his decision (which it does not).  *Moore*, 405 F.3d at 1213 (quoting *Bloodsworth*, 703 F.2d at 1239).

## CONCLUSION

For the reasons discussed above, I **recommend** that the District Court **DENY** Plaintiff's Motion [DE 19] and **GRANT** Defendant's Motion [DE 20].

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 8th day of November 2020.

*Jared Strauss*
**Jared M. Strauss**
**United States Magistrate Judge**

---

[8] Also, the ALJ evidently considered and rejected the notion that Plaintiff would consistently miss at least two days of work per month, as one of the ALJ's hypothetical questions to the VE included a limitation of being absent from work two or more days per month, Tr. 68, and the ALJ did not ultimately include such a limitation.  Nonetheless, there is nothing in the record to show that Plaintiff would *consistently* miss two or more days of work per month.  Finding otherwise would be impermissibly substituting the Court's judgment in place of the ALJ's judgment.